IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MILLENNIUM TGA, INC.,<br><br>　　　*Plaintiff*,<br>v.<br><br>JOHN DOE,<br><br>　　　*Defendant*. | No. 1:12-mc-00357 (BAH)<br><br>[Underlying civil action pending in the U.S. District Court for the Southern District of Texas, No. 4:11-cv-4501] |

**NON-PARTY CEQUEL III COMMUNICATIONS II, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

Plaintiff Millennium TGA, Inc. ("Millennium") is a Hawaii corporation which produces pornographic films. Non-Party Cequel III Communications II, LLC d/b/a Cebridge Connections ("Cebridge") is an internet service provider in the business of providing access to the Internet to its customers. Millennium has filed a motion to compel Cequel to produce the names and addresses of ten of its customers who have allegedly participated in a Bit Torrent "swarm" involving one of Millennium's films, an effort entitled "Shemale Yum – Jenna Comes a 'Knocking!" (the "Film"). Cequel has objected to Millennium's subpoena and submits the following arguments in support of its position in opposition to Plaintiff's motion to compel.

## I.   PRELIMINARY STATEMENT

On June 28, 2012, Millennium filed a "Motion to Compel Compliance with Subpoena" seeking an order compelling Cequel to produce documents in response to a subpoena issued by this Court. [Dkt. No. 1]. This matter was assigned to Judge Howell as Miscellaneous Action 12-0357 (hereinafter "*Millennium TGA V*"). To date, Millennium has not served Cequel with its motion, an apparent violation of Local Rule 5.4(d). In addition, Millennium did not attach a

copy of the subpoena or Cequel's Objection Letter to its motion or include a memorandum of law or other detailed explanation of why the information sought is relevant and why Comcast's objections should be overruled, all in violation of Local Rules 5.2(b) and 7(a). *See First Time Videos, LLC v. Comcast Cable Communications, LLC*, No. 1:12-mc-00354-CKK, *Order* [Dkt. No. 4] (D.D.C. July 9, 2012).

Upon filing its motion to compel, counsel for Millennium noted that its motion arises from a discovery order from a related case in the Southern District of Texas, *Millennium TGA, Inc. v. Doe*, No. 4:11-cv-4501 (S.D. Tex. Feb. 9, 2011) (hereinafter "*Millennium TGA II*"). [*See* Dkt. No. 2]. More importantly, Counsel did ***not*** note that this matter is also related to three other proceedings in this Court, namely: *Millennium TGA, Inc. v. Does 1-939*, No. 1:11-cv-02176 (D.D.C.) (hereinafter "*Millennium TGA I*"), and *Millennium TGA, Inc. v. Comcast Cable Communications LLC*, No. 1:12-mc-00150 (D.D.C.) (hereinafter "*Millennium TGA III*"), which were both heard by Judge Wilkins, and *Millennium TGA, Inc. v. John Doe*, No. 1:12-mc-00355 (hereinafter "*Millennium TGA IV*"), which was initially assigned to Judge Huvelle, who *sua sponte* reassigned the proceeding to Judge Wilkins pursuant to Local Rule 40.5(b)(2) for failure to list all "related cases" on the civil cover sheet at the time of filing its action.[1] (*See Millennium TGA IV*, Dkt. No. 4). In light of Millennium's failure to notify this Court of several related proceedings, and its ongoing tactic of engaging in "judge shopping," Cequel is concurrently filing a notice of related case and request for reassignment to Judge Wilkins pursuant to Local Rule 40.5.

---

[1] On the same date that Millennium filed a motion to compel in this docket, it also filed an identical motion to compel compliance against Comcast Cable Communications in *Millennium TGA IV*, notwithstanding the fact that Judge Wilkins' June 25, 2012 Memorandum Opinion already denied that motion against Comcast. [*See Millennium TGA IV*, Dkt. No. 1]. After Judge Huvelle reassigned *Millennium TGA IV* to Judge Wilkins, Millennium voluntarily dismissed the proceeding. [*See Millennium TGA IV*, Dkt. No. 6].

The underlying action in this proceeding arises from a copyright infringement case filed by Millennium in the U.S. District Court for the Southern District of Texas wherein Millennium alleges that certain anonymous defendants infringed its copyright in the Film by distributing and downloading unauthorized copies or excerpts over the Internet. [*See Millennium TGA II*, Dkt. No. 1, Compl. ¶¶ 1, 3]. Cequel is not a defendant in this action and is not alleged to have done anything wrong. Instead, Cequel has been served with a subpoena which Millennium has caused to issue out of this Court requiring it to provide the names and addresses of Cequel's customers who Millennium contends illegally downloaded the copyrighted work via the Bit Torrent file sharing protocol. [*Id*. ¶ 4].

Millennium served its subpoena on Cequel on February 16, 2012. (A copy of the subpoena is attached hereto as Ex. A). The subpoena is improper and Millennium's motion to compel should be denied on a variety of well-established grounds, mostly stemming from the fact that discovery of the ten John Does is irrelevant to the claims against the one named Doe and it would be improper in any event to have those Does joined in a single action. In addition, Cequel objects to Millennium's subpoena on the grounds it is unduly burdensome (due to the irrelevancy and that the Subpoena was served more than a 1000 miles from where the action is pending and the subscribers reside).[2] Because of these problems, Millennium has not obtained a valid court order authorizing disclosure of subscribers' identifying information as required by 47 U.S.C. § 551(c)(2)(B), and the rules for possible joinder of the alleged co-conspirators (whose identities are sought in discovery) in the underlying copyright action have not been met because – as courts have repeatedly and resoundingly held – the alleged use of BitTorrent technology

---

[2] Of the ten Cequel IP addresses, one is in the Houston area, four are in other areas of Texas, and five are outside Texas altogether: Nixa, MO; Daniels, WV; New Iberia, LA; Flagstaff, AZ; Fort Sill, OK; College Station, TX; Tyler, TX; San Angelo, TX; and Abilene, TX (2). We used http://ip-address-lookup-v4.com/ to make these determinations.

does not satisfy the requirements for permissive joinder. (*See* Cequel Objection Ltr.) (referred to herein as the "Objection Letter," and attached hereto as Ex. B).

As recently as June 25, 2012, Judge Wilkins issued a Memorandum Opinion in *Millennium TGA III* denying Millennium's identical motion to compel another ISP's compliance with the a subpoena that sought identities of subscribers in the same *Millennium TGA II* case that formed the basis for the subpoena served on Cequel and subject of the motion to compel here. Judge Wilkins ruled that "[t]here is no rhyme or reason as to why the rights of all [of the ISP's] subscribers should be heard and adjudicated in the District of Columbia," and that "this approach hardly demonstrates compliance with the Plaintiff's affirmative duty pursuant to Rule 45 to take 'reasonable steps' to avoid undue burden and territorial inconvenience to the … subscribers residing outside of the District of Columbia." *Millennium TGA III*, 2012 WL 2371426, at *5 (D.D.C. June 25, 2012). The Court also pointed to the "considerable confusion" caused by the *ex parte* discovery order issued by the Texas court in *Millennium TGA II*, the resulting "letters, objections, motions for protective orders and motions to quash" filed by subscribers in the Texas court, as well as in this Court, and how Millennium has "created a situation where motions to quash are being filed in two jurisdictions simultaneously, effectively doubling the burden on the nonparty subscribers." *Id.* Noting that "[b]ased on this record, this Court would be justified in denying the Motion to Compel in its entirety based on the undue burden and territorial inconvenience to the Comcast subscribers," Judge Wilkins nevertheless decided to "exercise [the Court's] discretion to enforce the subpoena in a modified form." *Id.* at *6. Accordingly, Judge Wilkins denied the request for identifying information for the ISP's subscribers as unduly burdensome, (*see id.*), and instead ordered the ISP to "provide the city and state of residence for

4

the subscriber associated with each of the 351 IP addresses requested in Millennium's subpoena." *Id.* at *7.

As more fully set forth below, Millennium's motion to compel compliance should be denied for the following reasons that resulted in the denial of the motion to compel before Judge Wilkins:

*First*, the subject subpoena should be quashed insofar as Millennium fails to fulfill its affirmative duty to prevent undue burden or expense to the persons subject to the subpoena. Fed. R. Civ. P. 45(c)(1). Millennium's subpoena fails to prevent undue burden resulting from nonparty territorial inconvenience, which impacts not only Cequel, but also its third-party subscribers, who have a privacy interest in the information sought by Millennium. *In re Sealed Case*, 141 F.3d 337, 343 (D.C. Cir. 1998).

*Second*, the rules for joinder of the Doe defendants and/or their alleged co-conspirators cannot be satisfied in the underlying action and, therefore, the subpoena seeking to identify the extra-territorial and un-joined owners of IP addresses who could not be joined in one action in Texas, is not reasonably calculated to lead to the discovery of evidence relevant to the pending claims. Fed. R. Civ. P. 26(b)(1) and 45. Indeed, the lack of relevancy is evident on the face of the exhibit attached to Millennium's complaint in the underlying action, which reflects that the alleged illegal activities of the different IP addresses occurred on different days and times over a near four month time period. [*Millennium TGA II*, Dkt. No. 1, Compl. Ex. A].

*Third*, Millennium should not be allowed to profit from unfair litigation tactics whereby Millennium uses the offices of the Court as an inexpensive means to gain Doe defendants' personal information and coerce "settlements" from them. It is evident in this case – and the multitude of cases filed by Millennium and other pornographers represented by its counsel – that

Millennium has no interest in actually litigating its claims against the Doe defendants, but simply seeks to use the Court and its subpoena powers to obtain sufficient information to shake down the Doe defendants. The Federal Rules require the Court to deny discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This case requires such relief.

## II.    ARGUMENT

### A.    Legal Standard

When a motion to compel compliance with a subpoena is filed against a non-party, Rule 45(c)(3) requires the court to quash or modify the subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). To this end, district courts must be "generally sensitive to the costs imposed on third parties" when considering a motion to compel pursuant to Rule 45. *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007). Courts must consider "whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive." *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)). Therefore, courts "have the discretion to limit discovery to prevent undue expense to third parties, even if the discovery sought is within the permissible scope of Rule 45 and Rule 26." *Millennium TGA III*, 2012 WL 2371426, at *3. Moreover, "[j]ust as it is improper under Rule 45 to subject non-parties to undue expense, it is also improper to subject non-parties to the undue inconvenience of litigating in a distant forum." *Id.* In this matter, "nonparty witness territorial convenience" is a valid factor to consider on a motion for a protective order in connection with a Rule 45 subpoena. *In re Sealed Case*, 141 F.3d at 342.

Where, as here, the underlying action has a significant procedural defect and the purpose of the subpoena is manifestly not to obtain information for use in this litigation but to extract money from numerous individuals whom Millennium knows are not subject to the territorial

jurisdiction of this Court, any burden put upon a non-party to identify such individuals is an undue burden. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.").

### B. Plaintiff's Subpoena Imposes An Undue Burden On Cequel

The burden and inconvenience of Millennium's subpoena on Cequel and its subscribers is significant and justifies denial of Millennium's motion. As set forth above, Millennium had an affirmative duty to "take reasonable steps to avoid imposing undue burden or expense on [the] person[s] subject to the subpoena…." Fed. R. Civ. P. 45(c)(1).

None of the ten Cequel subscribers whose personal information is sought in the subpoena reside in the District of Columbia. Millennium has not directly responded to Cequel's arguments about the inconvenience of this forum for issuing a subpoena affecting non-parties residing outside the District of Columbia. Instead, Millennium has conclusorily stated that this is "not a legitimate basis for objecting to the Subpoena." [Dkt. No. 1 at 2].

As Judge Wilkins ruled on a nearly identical motion to compel in *Millennium TGA III*, "[t]here is no rhyme or reason as to why the rights of all … subscribers should be heard and adjudicated in the District of Columbia." *Millennium TGA III*, 2012 WL 2371426, at *5. As the Court went on to explain, "[e]ngaging in 'one stop shopping' in the District of Columbia for the personal identifying information for all … subscribers may be convenient, for whatever reason, to the Plaintiff," but "this approach hardly demonstrates compliance with the Plaintiff's affirmative duty pursuant to Rule 45 to take 'reasonable steps' to avoid undue burden and territorial inconvenience to the … subscribers residing outside the District of Columbia." *Id.*

The impact on Cequel's subscribers is substantial. As Cequel noted in its objection letter, five of the IP addresses identified in the subpoena as Cequel subscribers are located in Texas, yet

they would have to file and litigate any objections in the District of Columbia.  Judge Wilkins pointed out that "[e]xperience has shown that many of the subscribers are laypersons without legal background, and that most will not have counsel and will therefore appear *in propria persona*."  *Millennium TGA III*, 2012 WL 2371426, at *5.  On that basis, Judge Wilkins concluded that "it is very important that these subscribers are not subject to litigating in an arbitrarily-selected forum that is hundreds, or even thousands, of miles away from their residences."  *Id.*

Moreover, the burden on nonparty subscribers has been exacerbated by "an error committed by the Plaintiff."  *Millennium TGA III*, 2012 WL 2371426, at *5.  As Judge Wilkins explained:

> The order granting expedited discovery contained language, which was proposed and drafted by the Plaintiff, stating that "[s]ubscribers shall have thirty (30) days from the date of notice of the subpoena upon them to file any motions in this Court to contest the subpoena.  If the thirty-day period lapses without a contest, the ISP will have ten (10) day [sic] thereafter to produce the information in response to the subpoena to Plaintiff."  See Order granting Plaintiff's Motion for Leave to Take Expedited Discovery at ¶ 5, Millennium TGA II, Feb. 9, 2012 [Dkt. No. 6].  Thus, the discovery order from the Texas court purported to set terms and conditions for compliance with any future subpoena, and it even specified that objections were required to be filed in Texas, rather than with the court from which any subpoena issued.

*Millennium TGA III*, 2012 WL 2371426, at *5 (emphasis omitted).  Judge Wilkins went on to illustrate the "considerable confusion" that has resulted from this order, whereby "over a dozen ISP subscribers" have field letters, objections, motions for protective orders and motions to quash in the Southern District of Texas.  *Id*. (citing *Millennium TGA II*, Dkt. Nos. 10, 12, 14, 15, 17, 20, 22, 27, 31, 32, 33, 35, 36, 38, 40, 41).  In addition, and evidencing confusion with the Texas court's order, many Comcast subscribers filed objections in this Court in the *Millennium*

8

*TGA III* proceeding. Judge Wilkins concluded that "Plaintiffs have created a situation where motions to quash are being filed in two jurisdictions simultaneously, effectively doubling the burden on the nonparty subscribers." *Id.* at *8 n.6 (noting that "the Texas court has ruled upon (by denying) at least two such motions to quash). Such duplicative proceedings are unduly burdensome and improper because "only the issuing court has the power to act on its subpoenas." *In re Sealed Case*, 141 F.3d at 341 (analyzing the language and context of Rule 45, relevant caselaw, and the Advisory Committee Notes to Rule 45).

In *Millennium TGA III*, Judge Wilkins concluded that, "[b]ased on this record, this Court would be justified in denying the Motion to Compel in its entirety based on the undue burden and territorial inconvenience to the … subscribers…." *Millennium TGA III*, 2012 WL 2371426, at *6. However, in light of Millennium's "need and desire to prosecute any potentially viable claims of copyright infringement," Judge Wilkins instead modified the subpoena. First, Judge Wilkins denied the request for identifying information for the subscribers. *Id*. Instead, the Court required Comcast to provide the city and state of residence for the subscribers associated with each of the IP addresses requested in Millennium's subpoena. *Id.* Cequel agrees that a modified subpoena in this proceeding would also be just.

      **C.**     **Joinder of the Doe Defendants in a Single Action Would be Improper**

The Complaint relies on the "swarm joinder" theory promoted by Millennium in this case and by Millennium and other pornographic film producers in numerous other cases to justify either naming multiple Does or seeking discovery of unnamed Does who allegedly participated in the same "swarm." Rule 20 governs the permissive joinder of parties and provides that defendants may be joined in one action where a plaintiff states a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) & (B).

9

Millennium argues that every owner of an IP address which allegedly participates in a BitTorrent "swarm" is acting in concert to violate Millennium's copyright. However, as Cequel has pointed out in its Objection Letter, the exhibit attached to Millennium's Complaint reflects that the alleged illegal activity of the different IP addresses occurred on different days and times over a nearly two month time period, which negates the allegation that all of the Doe defendants were part of a single swarm. If the joinder of the Doe defendants could not be satisfied in the underlying action, compelling discovery of these alleged co-conspirators is completely irrelevant and improper and Millennium's motion to compel must be denied.

Millennium asserts that the Doe defendants "took concerted action" and "were collectively engaged in the conspiracy even if they were not engaged in the swarm contemporaneously." [*Millennium TGA II*, Dkt. No. 1, Compl. ¶ 10]. However, courts have found that "[m]uch of the BitTorrent protocol operates invisibly to the user – after downloading a file, subsequent uploading takes place automatically if the user fails to close the program." *K-Beech, Inc. v. Does 1-37*, No. 2:11-cv-03995, *Order & Report and Recommendations* [Dkt. No. 39] at 19 (E.D.N.Y. May 1, 2012). Thus, the user plays no role in these interactions. Indeed, "[t]he bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011). *See also Patrick Collins, Inc. v. Does 1-23*, No. 11-cv-15231, *Order* [Dkt. No. 8] at 6 (E.D. Mich. Mar. 26, 2012) ("[S]imply alleging the use of BitTorrent technology … does not comport with the requirements under Rule 20(a) for permissive joinder.").

In addition, the Fourth Circuit, joining other courts, has recently held that a state law civil conspiracy claim is preempted by the federal Copyright Act. *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 2012 WL 2036971, at *15 (4th Cir. June 6, 2012); *accord Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 229 (S.D.N.Y. 2010); *Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 423-28 (W.D. Pa. 2008); *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 960 (N.D. Ill. 2002); *Hoey v. Dexel Sys. Corp.*, 716 F. Supp. 222, 224 (E.D. Va. 1989); *Aqua Bay Concepts Inc. v. Grosse Point Bd. of Realtors*, 24 U.S.P.Q.2d 1372, 1376 (E.D. Mich. 1992); *see also Pacific Century Int'l, Ltd. v. Does 1-37*, 2012 WL 1072312, at *4 (N.D. Ill. Mar. 30, 2012) (ruling that plaintiffs in BitTorrent copyright infringement action had not, and could, plausibly plead facts establishing an agreement, a required element of the civil conspiracy claim). "The federal courts are not free-standing investigative bodies whose coercive power may be brought to bear at will in demanding documents from others. Rather, the discovery devices in federal court stand available to facilitate the resolution of actions cognizable in federal court." *Houston Business Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1213 (D.C. Cir. 1996). As Judge Wilkins concluded, "[i]f the civil conspiracy claim is invalid, there is no good cause for discovery related to the alleged co-conspirators." *Millennium TGA III*, 2012 WL 2371426, at *6.

Moreover, the fact that the alleged downloads took place over a nearly two month period further undermines the allegation that all of the Doe defendants were part of a single swarm. Thus, even assuming, arguendo, that the Doe defendants actually infringed Millennium's copyright, the assertion that they acted in concert is unsupported by Millennium's own evidence. *See Patrick Collins, Inc. v. Does 1-23*, No. 11-cv-15231, *Order* [Dkt. No. 8] at 7 ("The nearly three month time span covering this activity suggests the likely possibility that there was never

11

common activity linking the 23 addresses in this matter."); *K-Beech, Inc. v. Does 1-41*, 2012 WL 773683, at *4 (S.D. Tex. Mar. 8, 2012) ("While [plaintiff] provides the precise date, hour, minute, and second at which it alleges that each Doe Defendant was observed to be sharing the torrent of the copyrighted work, [plaintiff] does not indicate how long each Doe Defendant was in the swarm or if any Doe Defendants were part of the swarm contemporaneously."); *Raw Films, Ltd. v. Does 1-32*, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (stating that the "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert"); *Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011) (conduct over a three month time span was "insufficient to meet the standards of joinder set forth in Rule 20"). Consequently, Millennium has not satisfied the requirement of establishing that the Doe defendants participated in the same "transaction" or "occurrence" within the meaning of Rule 20.

Under the Federal Rules, discovery is only appropriate if the information sought is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Williams v. Blagojevich*, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) ("The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules."). "When evaluating relevancy, 'a court is not required to blind itself to the purpose for which a party seeks information.'" *Pacific Century Int'l, Ltd. v. Does 1-37*, 2012 WL 1072312, at *4 (quoting *Oppenheimer Fund*, 437 U.S. at 353). Accordingly, "'when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.'" *Id*. at *5 (citation omitted).

Where, as here, "[t]he plaintiff['s] contention, in essence, is that identities of the non-parties associated with the IP addresses will be relevant to claims against future defendants who

12

have not yet been sued," but the ultimate joinder of such defendants is improper, "subpoenas seeking the identity of users of non-party IP addresses are not reasonably calculated to lead to the discovery of evidence relevant to the pending claims." *Id.* at *4.

Alternatively, because joinder in any event would be permissive, a Court could exercise its discretion to sever under Rules 20(b), 21, and 42(b). In determining whether to exercise that discretion, a court should "'examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side.'" *K-Beech, Inc. v. Does 1-37*, No. 2:11-cv-03995, *Order & Report and Recommendations* [Dkt. No. 39] at 20 (quoting *On the Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 503 (N.D. Cal. Sept. 26, 2011)). "'Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved.'" *Id.* (quoting *SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011)).

Millennium's strategy in filing these cases effectively precludes consideration of joinder issues at a later point in the proceedings despite claims they seek to join all subscribers who are identified. Entities such as Millennium "are not seeking information about the non-party IP addresses for the purpose of litigating their current claims," but rather, they "intend to either sue the individuals whose identity they uncover or, more likely, to negotiate a settlement with those individuals." *Pacific Century Int'l, Ltd. v. Does 1-37*, 2012 WL 1072312, at *5. Indeed, due to Millennium's litigation strategy, which included avoiding review on the merits except at a preliminary, ex parte stage, any determination regarding the propriety of joining the Doe defendants was made without any factual record by a court that was unaware of any fact specific defenses which would strongly weigh against allowing joinder in this action. On this issue, one court has observed: "Joining Defendants to resolve what at least superficially appears to be a

13

relatively straightforward case would in fact transform it into a cumbersome procedural albatross." *Pacific Century Int'l, Ltd. v. Does 1-101*, 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011). Therefore, principles of fundamental fairness and judicial economy require that permissive joinder not be allowed in this case.

For these reasons, Millennium's Motion should be denied and the subpoenas should be quashed.

### D. Millennium Should Not Be Allowed to Profit From Unfair Litigation Tactics

Producers of pornographic movies, such as Millennium, are using "John Doe" suits en masse to identify copyright infringers. As of February 2012, the lawyers representing Millennium in this proceeding had filed at least 118 such lawsuits against over 15,000 John Does in the last year and a half alone. *See AF Holdings, LLC v. Does 1-135*, No. 5:11-cv-03336, *Decl. of Charles E. Piehl and Ex. A* [Dkt. Nos. 43, 43-1] (N.D. Cal. Feb. 24, 2012) (providing a list of cases filed by Millennium's law firm as of Feb. 24, 2012).

As another court explained, the *modus operandi* of Millennium's litigation tactics in these cases is:

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*MCGIP, LLC v. Does 1-149*, 2011 WL 4352110, at *4 n.5 (N.D. Cal. Sept. 16, 2011) (citation omitted).

Plaintiffs, like Millennium, use well-documented "intimidating tactics" to obtain settlements. *Millennium TGA III*, 2012 WL 2371426, at *7 (taking judicial notice of pleadings filed in Northern District of California and describing correspondence "allegedly sent by counsel representing [Millennium]" as evidencing "intimidating tactics and oppressive demands"). Based on reports of harassing communications from some lawyers prosecuting these cases, court have imposed protective orders to regulate communications between counsel for copyright holders and internet subscribers. *See, e.g., Digital Sin, Inc. v. Does 1-27*, 2012 WL 2036035 (S.D.N.Y. June 6, 2012) (refusing disclosure of email addresses and telephone numbers, and requiring specific and detailed disclosures to subscribers advising them of their rights and how to object to disclosure of their identifying information to the plaintiff); *Malibu Media, LLC v. Does 1-5*, 2012 WL 2001968 (S.D.N.Y. June 1, 2012) (refusing disclosure of telephone numbers of subscribers due to potential for harassing phone calls from plaintiff's counsel).

In cases like this, plaintiffs, like Millennium, use a Doe defendant's concern with being publicly charged with downloading pornographic films to wrest settlements from identified subscribers. Many courts evaluating similar cases have shared this concern. *See, e.g., Pacific Century Int'l, Ltd. v. Does 1-37*, 2012 WL 1072312, at *3 ("[T]he subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle."); *Digital Sin, Inc. v. Does 1-176*, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012) ("This concern, and its potential impact on social and economic relationships, could compel a defendant entirely innocent of the alleged conduct to enter an extortionate settlement."); *SBO Pictures*, 2011 WL 6002620, at *3 (defendants "whether guilty of copyright infringement or not – would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great

potential for a coercive and unjust 'settlement'"). Another court examining the "economics" of pornographic copyright lawsuits analyzed it this way.

> The Court is familiar with lawsuits like this one. *AF Holdings LLC v. Does 1-1058*, No. 1:12-cv-48(BAH) (D.D.C. filed January 11, 2012); *Discount Video Center, Inc. v. Does 1-5041*, No. C11-2694CW(PSG) (N.D. Cal. filed June 3, 2011); *K-Beech, Inc. v. John Does 1-85*, No. 3:11cv469-JAG (E.D. Va. filed July 21, 2011). These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.
>
> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

*Malibu Media, LLC v. Does 1-10*, No. 2:12-cv-03623, *Order* [Dkt. No. 7] at 6 (C.D. Cal. June 27, 2012).

In addition to the procedural improprieties discussed supra, Millennium's tactics "deny the federal courts additional revenue from filing fees in the suits that should be filed to obtain the information the plaintif[f] desire[s]." *Pacific Century Int'l v. Does 1-37*, 2012 WL 1072312, at *11 n.15. Thus, in this case, Millennium filed a single case, and paid one filing fee, to limit its expenses as against the amount of settlements it is able to negotiate. "Postponing a determination on joinder in these cases 'results in lost revenue of perhaps millions of dollars

(from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as many doe defendants as possible.'" *K-Beech, Inc. v. Does 1-37*, No. 2:11-cv-03995, *Order & Report and Recommendations* [Dkt. No. 39] at 22-23 (quoting *K-Beech, Inc. v. Does 1-41*, 2012 WL 773683, at *5). This case is an obvious instance where the court should deny discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

### III.   CONCLUSION

For the foregoing reasons, Cequel respectfully requests that this Court deny Millennium's Motion to Compel and quash the subpoena.

Dated:  July 12, 2012

Respectfully submitted,

/s/ *John D. Seiver*
John D. Seiver
Leslie G. Moylan
Lisa B. Zycherman
**DAVIS WRIGHT TREMAINE LLP**
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
(202) 973-4200

*Counsel for Non-Party Comcast Cable Communications Management, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of July 2012, true and correct copies of the foregoing document was served via ECF and U.S. Mail upon all counsel of record:

Paul A. Duffy
John L. Steele (*pro hac vice*)
PRENDA LAW INC.
161 N. Clark Street
Suite 3200
Chicago, IL 60601
(312) 880-9160
Fax: (312) 893-5677
Email: paduffy@wefightpiracy.com

/s/ *John D. Seiver*
John D. Seiver