**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MILLENNIUM TGA, INC., | ) | |
| | ) | CASE NO.   1:12-mc-00357-BAH |
| Petitioner, | ) | |
| | ) | Judge: Honorable Beryl A. Howell |
| v. | ) | |
| | ) | |
| CEBRIDGE CONNECTIONS, LLC, | ) | [Case pending in the U.S. District Court |
| | ) | for the Southern District of Texas |
| Respondent. | ) | No. 4:11-cv-4501] |
| _____ | ) | |

<u>**REPLY TO CEBRIDGE'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL**</u>
<u>**COMPLIANCE WITH SUBPOENA**</u>

Petitioner Millennium TGA, Inc., respectfully submits this reply to Cequel III

Communications II, LLC d/b/a Cebridge Connections' ("Cebridge") opposition to Petitioner's

Motion to Compel. As their objection letter and subsequent opposition memorandum make

abundantly clear, Cebridge has no lawful basis under the Federal Rules of Civil Procedure for

avoiding compliance with Petitioner's subpoena. Petitioner addresses the arguments raised in

Cebridge's opposition memorandum herein.

**BACKGROUND**

On December 20, 2011, Petitioner brought a copyright infringement action against an

unnamed John Doe in the U.S. District Court for the Southern District of Texas, alleging that

John Doe conspired with unnamed other tortfeasors to illegally copy and distribute its

copyrighted work to others over the Internet.  Compl., *Millennium TGA, Inc. v. Doe*, No. 4:11-

cv-4501 (S.D. Tex.), ECF No. 1. Along with its Complaint, Petitioner submitted an Exhibit

containing the Internet Service Provider ("ISP") and Internet Protocol ("IP") address associated

with the infringing activities of John Doe, as well as an Exhibit containing a list of ISPs and IP

addresses associated with the unnamed joint tortfeasors who Petitioner alleged to have

collaborated with John Doe. Compl., Ex. A & Ex. B, *Millennium TGA, Inc. v. Doe*, No. 4:11-cv-4501 (S.D. Tex. Dec. 20, 2011), ECF Nos. 1-1 & 1-2. On December 21, 2011, Petitioner moved for expedited discovery to obtain certain identifying information for John Doe, as well as for the joint tortfeasors. Pl.'s Mot. for Leave to Take Expedited Disc., *Millennium TGA, Inc. v. Doe*, No. 4:11-cv-4501 (S.D. Tex.), ECF No. 2.

On February 9, 2012, the court granted Petitioner leave to issue subpoenas *duces tecum* to various ISPs for production of identifying information with respect to the IP addresses of "John Doe and each of his co-conspirators." Order Granting Pl.'s Mot. for Leave to Take Expedited Disc., *Millennium TGA, Inc. v. Doe*, No. 4:11-cv-4501 (S.D. Tex.), ECF No. 6. In accordance with this Order, Petitioner issued subpoenas to various ISPs, including Cebridge, on February 15, 2012. (Ex. A.) On March 1, 2012, Cebridge objected to Petitioner's subpoena on four independent grounds. (A true and correct copy of which is attached hereto as Exhibit B.) In its objection letter, Cebridge indicated that it "will not notify our subscribers or produce documents or any other information identifying subscribers associated with the IP addresses." (Ex. B at 2-3.)

After receiving Cebridge's objection letter, Petitioner filed a motion to compel Cebridge's compliance with Petitioner's subpoena on June 28, 2012. (ECF No. 1.) On July 12, 2012, Cebridge filed a motion in opposition to Petitioner's motion to compel and raised several additional arguments not previously raised in its objection letter. (ECF No. 4.) For the reasons set forth below, Cebridge has not identified a single valid basis to avoid compliance with the subpoena. Petitioner therefore respectfully requests that this Court grant its motion to compel, and direct Cebridge to immediately produce any and all information within its possession, custody and control that is responsive to subpoena.

**DISCUSSION**

Cebridge's objection letter contains four separate grounds for non-compliance. (Ex. B.) First, Cebridge argues that there is no "valid court order that recognizes that [the Court] will ultimately have jurisdiction over the unnamed subscribers." (*Id.* at 2.) Second, Cebridge argues that there is no valid court order regarding "whether [the unnamed subscribers] may be properly joined." (*Id.*) Third, Cebridge argues that there is no valid court order requiring Petitioner to "provid[e] for reasonable reimbursement" to Cebridge. (*Id*. at 2-3.) Finally, Cebridge argues that the subpoena does not provide for "a reasonable time to fulfill any large order." (*Id*. at 3.)

In Cebridge's motion in opposition to Petitioner's motion to compel, Cebridge again raises its improper joinder arguments, but omits discussing the other three arguments raised in its objection letter. (ECF No. 4.) Instead, Cebridge raises two new arguments. (*Id.*) First, Cebridge argues that Petitioner's subpoena subjects it to an undue burden. (*Id.* at 7-9.) Second, Cebridge accuses Petitioner of unfair litigation tactics. (*Id.* at 14-17.)

Below, Petitioner will first respond to the arguments made in Cebridge's motion in opposition and will then respond to the arguments made in its objection letter. For the reasons set forth herein, the Court should grant Petitioner's motion to compel Cebridge's compliance with the Subpoena.

## I.    **Legal Standard**

Federal Rule of Civil Procedure ("Rule" or "Rules") 45, among other things, sets forth an exhaustive list of grounds on which a subpoena may be quashed or modified:

Rule 45(c)(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

A person objecting to a subpoena has a heavy burden to show that the subpoena should not be enforced. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984). The phrase, "undue burden" is not an incantation that excuses an objector from compliance. *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (holding that in order to quash or modify a subpoena due to undue burden, the moving party "must meet the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive."); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("The moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive.").

Claiming undue burden is a circumstance that must be substantiated. *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F.Supp.2d 770, 771 (N.D. Ill. 2005) (denying a motion to quash a subpoena because, *inter alia*, the parties claiming that the subpoena caused them an undue burden did "not propose[ ] any modification to the specific topics they contend are unduly

4

burdensome.") In this instance, the Court will not be able to find any argument or evidence why the subpoena imposes an undue burden on Cebridge's subscribers.

## II.    Cebridge's Undue Burden Arguments Focus Exclusively on the Burden Faced by its Party Subscribers and are Erroneous

Cebridge argues that Petitioner's subpoena subjects it to an undue burden. (ECF No. 4 at 7-9.) All of Cebridge's arguments, however, focus on the burden that would be placed on its subscribers in the underlying action. (*Id.*) Cebridge has the burden to show why *it* is burdened by Petitioner's subpoena. It is not enough for Cebridge to suggest that a subpoena imposes an undue burden on someone else—that is an argument for the other individual to make. *Northrop Corp.*, 751 F.2d at 404 ("The burden of proving that a subpoena *duces tecum* is oppressive is on the party moving for relief on this ground.").

Instead of discussing the burden it faces, Cebridge relies heavily on a recent decision by the Honorable Judge Wilkins. (ECF No. 4 at 7-9-7) (citing *Millennium TGA, Inc. v. Comcast Cable Communications, LLC*, 2012 WL 2371426 (D.D.C. June 25, 2012)). In *Millennium*, in response to identical objections raised by Comcast Cable Communications, LLC ("Comcast"), Magistrate Judge Alan Kay granted the plaintiff's motion to compel after finding that movant's "defenses (lack of jurisdiction, improper joinder) are not at issue at this stage of the proceedings nor is it appropriate for Comcast, a nonparty, to raise such these defenses on behalf of its subscribers." *Millennium TGA, Inc.*, No. 12-mc-00150 (D.D.C. Apr. 18, 2012), ECF No. 15 at 4-5. Movant objected to the decision. The Honorable Judge Wilkins overturned Magistrate Judge Kay's order and denied the plaintiff's motion to compel for two untenable reasons: 1) Rule 45 offers territorial protections to third parties not subject to a subpoena; and 2) the plaintiff's subpoena subjects those third parties to an undue burden. *Millennium TGA, Inc., LLC*, 2012 WL 2371426. It bears mentioning that neither of these reasons were raised or briefed by the parties in

*Millennium*, were discussed by Magistrate Judge Kay, or were raised by Cebridge in its objection to Petitioner's subpoena. Petitioner responds to these arguments below; the authority offered by Petitioner herein was not considered by Judge Wilkins.

**1. The Territorial Protections Embedded in Rule 45 do not Extend to Cebridge's Subscribers**

This Circuit has observed that "the rules governing subpoenas and nonparty discovery have a clearly territorial focus." *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998). However, this "territorial focus" is for the benefit of nonparties from whom discovery is sought. *Id.* ("The rules governing subpoenas and nonparty discovery have a clearly territorial focus. Applications for orders *compelling disclosure from nonparties* must be made to the court in the district where the discovery is to be taken….") (emphasis added). Non-party undue burden concerns are properly focused on the party from whom discovery is sought. *See, e.g.*, *Watts v. S.E.C.* 482, F.3d 501, 509 (D.C. Cir. 2007) (discussing the concerns associated with subjecting subpoenaed non-party government agencies to undue burden).

To hold that Rule 45 provides equivalent territorial protection to both subpoenaed respondents and third parties who might raise privacy objections with respect to a subpoena would render Rule 45 inoperable. Imagine that a plaintiff seeking the identity of a rental car driver had to identify common geography between the rental car provider and an out-of-state driver in order to issue a subpoena seeking the customer's identity. Such a location would often not even exist. In the online infringement context, broad swaths of the U.S. population would be immune from being identified in infringement actions. College students who transferred schools, were home for the summer, or recently graduated would be immune from identification so long as they resided in a different federal judicial district than their alma mater. Individuals who committed infringement from a hotel or on a mobile device while travelling would similarly be

immunized from identification. Individuals residing in states with multiple judicial districts, such as Texas (where the underlying action is pending), would also enjoy broad protection from identification. [1] Rule 45 cannot support an interpretation that renders Petitioner unable to identify those who violated its copyrights. *See Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.").

### 2. Petitioner's Subpoena Does Not Impose any Territorial Burden on Cebridge's Subscribers

Cebridge suggests that its subscribers will be subject to territorial inconvenience by Petitioner's subpoenas. (ECF No. 4 at 4-7, 9.) This, of course, is not true. Although a motion to quash may only be heard in the district from which a subpoena was issued, parties can always challenge the disclosure of their identifying information in the court where the underlying action is pending. *See, e.g.*, Fed. R. Civ. P. 26(c). There is simply no reason why someone would need to travel from Texas to the District of Columbia to challenge the disclosure of their identifying information. [2]

To the extent that Cebridge suggests that it should avoid compliance with Petitioner's subpoenas because its subscribers might be confused about how to defend against Petitioner's

---

[1] Rule 45 requires that subpoenas be issued from the place of production and that service be made within the district, within 100 miles of the district, according to state law or according to federal law. Take an action is pending in the Southern District of Texas, Houston Division. Even if a plaintiff knew the city of residence of a Texas-based subscriber, there is a strong chance that the plaintiff would be unable to identify him. For example, if a subscriber is located in the Southern District of Texas, but his ISP is based in the Eastern or Northern Districts of Texas, then there would simply be no federal district from which a plaintiff could issue a valid subpoena. *See* Fed. R. Civ. P. 45(b)(2)(B); *see also* Tex. R. Civ. P. 176.3 (limiting the territorial range of subpoenas to 150 miles).

[2] If anything, the issuance of Petitioner's subpoena from this District *lessens* the burden on the alleged infringers because it provides a second (perhaps more convenient) forum in which to file motions challenging the disclosure of their identifying information.

copyright infringement claims, Petitioner would make two observations. First, Cebridge can reduce this confusion via a notice to its subscribers with information on how to properly challenge the disclosure of their identifying information. Second, as one court in the U.S. District Court for the Northern District of Illinois recently did in response to near-identical arguments by Cebridge, this Court could grant Petitioner's motion to compel and then transfer the subpoena to the district where the underlying action is pending for hearings on subscriber-filed motions to quash. *See Bubble Gum Productions, LLC v. Does 1-60*, No. 12-3046 (N.D. Ill. July 13, 2012), ECF No. 22, attached hereto as Exhibit C.

### III.   Cebridge's Joinder Objection is Erroneous and Unavailing

Cebridge argues that joinder of the Doe defendants in a single action would be improper. (ECF No. 4 at 9-13); (*see also* Ex. B at 2). Cebridge's joinder argument is erroneous because it suffers from at least two fatal procedural defects. First, joinder objections do not fall within Rule 45's list of permissible grounds for quashing or modifying a subpoena. *See* Fed. R. Civ. P. 45. The objection should be denied on this basis alone. Second, Cebridge has no colorable basis for claiming standing to challenge permissive joinder in an action to which it is not a party.

Beyond these procedural defects, Cebridge's joinder objection is premature because at this procedural juncture, the issue of joinder is unripe for determination. Petitioner named only a single Doe Defendant in the underlying action; John Doe's alleged joint tortfeasors are not named as parties. Compl., *Millennium TGA, Inc. v. John Doe*, No. 4:11-cv-04501 (S.D. Tex. Dec. 20, 2011), ECF No. 1. It is axiomatic to say that a single defendant cannot be misjoined with himself. Petitioner stated in the underlying complaint that it "may elect, after learning additional facts, to seek leave of the Court to amend this complaint to include John Doe's co-conspirators as defendants in this action pursuant to Fed. R. Civ. P. 20(a)(2) so long as the Court

has jurisdiction over those individuals." *Id.* ¶ 38. Cebridge acknowledged in its objection letter that Petitioner has not joined any of John Doe's alleged joint tortfeasors at this stage of the underlying litigation, and that any future joinder would be subject to the court's judgment regarding the requirements of Fed. R. Civ. P. 20(a)(2) and jurisdictional issues. (Ex. B. at 3.) Despite this acknowledgement, Cebridge nevertheless objects based on its personal view of what a court "would likely" do, in the event that Petitioner does seek leave of the court to amend its complaint at a future date. (Ex. B. at 3–4.) In other words, Cebridge purports to object to joinder that has not yet occurred, based upon how it believes the U.S. District Court for the Southern District of Texas would be "likely" to handle that hypothetical request. This objection should be rejected as clearly premature.

Even if joinder were a proper issue at this stage of the litigation—and not clearly premature—the weight of authority suggests that Petitioner would be able to satisfy the requirements for the permissive joinder of John Doe and his joint tortfeasors under Rule 20, and that a finding of misjoinder would be premature prior to the point at which the putative defendants have been identified, named, and served with process. In this District and nationwide, courts have determined that allegations concerning putative defendants' use of the BitTorrent file-sharing protocol may suffice to establish a logical relationship between claims against putative defendants in BitTorrent-based copyright infringement litigation. *See, e.g.*, Order, *Imperial Enters. Inc. v. Does 1–3,145*, No. 11-529 (RBW) (D.D.C. Aug. 30, 2011), ECF No. 43 at *3–5, 8 (Walton, J.); *W. Coast Prod., Inc. v. Does 1–5,829*, No. 11-57 (CKK), 2011 WL 2292239, at *5 (D.D.C. June 10, 2011) (Kollar-Kotelly, J.); *Donkeyball Movie, LLC v. Does 1–171*, No. 10-1520 (BAH), ____ F. Supp. 2d ____, 2011 WL 1807452, at *4–9 (D.D.C. May 12, 2011) (Howell, J.); *Voltage Pictures, LLC v. Does 1–5.000*, No. 10-0873 (BAH),  ____ F. Supp.

2d. _____, 2011 WL 1807438, at *4–9 (D.D.C. May 12, 2011) (Howell, J.); *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011); *see also, e.g.* Order, *AF Holdings v. Does 1-162*, No. 11-23036 (S.D. Fla. Feb. 14, 2012), ECF No. 27 at 6 ("If and when the Doe Defendants are identified and served with the Complaint, the issue of misjoinder may again be raised, to the extent necessary, based upon the actual parties involved at that point in time. Only then will the Court have at hand all that it needs to know to make a legally correct ruling."); *Patrick Collins, Inc. v. John Does 1–15*, No. 11-cv-02164, 2012 WL 415436, at *2–4 (D. Colo. Feb. 8, 2012) (Arguello, J.) (sustaining joinder and citing *Call of the Wild*); *Patrick Collins, Inc. v. Does 1–22*, No. 11-cv-01772-AW, 2011 WL 5439005, at *2–4 (D. Md. Nov. 8, 2011) (sustaining joinder and citing *Call of the Wild*); *Patrick Collins, Inc. v. Does 1–2,590*, No. C 11-2766 MEJ, 2011 WL 4407172, at *4–7 (N.D. Cal. Sept. 22, 2011) (James, J.) (sustaining joinder and citing *Call of the Wild*); *First Time Videos, LLC v. Does 1–76*, No 11 C 3831, 2011 WL 3586245, at *4 (N.D. Ill. Aug. 16, 2011) (Bucklo, J.) (collecting cases and concluding that "[t]he overwhelming majority of courts" have denied motions to sever "prior to discovery"); *First Time Videos, LLC v. Does 1–500*, 276 FRD 241, 2011 WL 3498227, at *9–11 (N.D. Ill. Aug. 9, 2011) (Castillo, J.).

Further, Petitioner would—in a hypothetical request for leave to amend its complaint—be able to identify common questions of law and fact. For instance, Petitioner would have to establish against each putative defendant the same legal claims concerning the validity of the copyright in the movie at issue and the infringement of the exclusive rights reserved to Petitioner as the copyright holder. Finally, joinder of the putative defendants would not prejudice any party or cause needless delay. To the contrary, "joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is

beneficial to the putative defendants." *Call of the Wild*, 770 F. Supp. 2d at 345; *see also First Time Videos, LLC v. Does 1–500*, 276 FRD 241, 2011 WL 3498227, at *9–11 (N.D. Ill. Aug. 9, 2011) ("[J]oined defendants enjoy the benefit of seeing what defenses, if any, other defendants may assert to avoid liability.")

Cebridge's joinder objection is clearly premature, as the Defendant in the underlying action is a single unidentified John Doe. Furthermore, Cebridge's suppositions regarding what a court might hypothetically be "likely" to do if joinder does become an issue are contrary to the overwhelming weight of authority regarding joinder in BitTorrent-based copyright infringement litigation. Cebridge has not offered a persuasive reason to sustain its objection.

## IV.    Cebridge's Arguments Regarding Unfair Litigation Tactics are Not Relevant to the Legal Standard Governing Motions to Compel and Factually Unsupported

Cebridge describes Petitioner as engaging in unfair litigation tactics, going so far as to accuse Petitioner of extortion. (ECF No. 4 at 6) (accusing Petitioner of "shak[ing] down the Doe defendants.") There is no good way or even good reason to respond to unsubstantiated character attacks leveled by a self-interested adversary. Character attacks should be seen for what they are—a manipulative device that is used when a speaker lacks a substantive basis for the relief it seeks. Yet, to simply ignore these character attacks in light of the intense vitriol that was directed against Petitioner and Petitioner's counsel by Cebridge would be to ignore the elephant in the room. For this reason, Petitioner responds to Cebridge's undignified statements.

First, Cebridge accuses producers of pornographic movies using "John Doe" suits *en masse* to identify copyright infringers. (ECF No. 4 at 14.) This accusation suggests its own rebuttal. Without a large and growing problem of copyright infringement, there could not be an increasing level of copyright infringement litigation. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928–29 (2005) ("digital distribution of copyrighted material

threatens copyright holders as never before.") There is nothing wrong with copyright infringement litigation—except, of course, from the perspective of the infringer.

Second, Cebridge accuses Petitioner of using "well-documented 'intimidating tactics.'" (ECF No. 4 at 15.) For being so "well-documented", as Cebridge describes, Cebridge's failure to provide any documentation of Petitioner's so-called "intimidating tactics" is puzzling. (*See generally* ECF No. 4.) As an indication of how unusual the "intimidating tactics" argument becomes, Cebridge references Judge Wilkins' taking of judicial notice of pleadings filed by Petitioner. (Id. at 15) (citing *Millennium TGA*, 2012 WL 2371426, at *7). If correspondence constitutes engaging in intimidating tactics, then what attorney would be insulated from such accusations?

Third, Cebridge accuses Petitioner of using a "Doe defendant's concern with being publicly charged with downloading pornographic films to wrest settlement from identified subscribers." (ECF No. 4 at 15.) Once again, Cebridge presents no actual knowledge or evidence to support this outrageous statement. (*See generally id.*) Further, Petitioner does not know what its alternative is. It is obviously true that no one wants to be named as a defendant in a lawsuit involving stealing pornographic films, or mainstream films for that matter. All litigation is inherently coercive. But simply because litigation is unpleasant (as it is for every litigant, including Petitioner) does not mean that a Court should preclude Petitioner from learning the identities of those who infringed on its copyright. Petitioner would prefer that no one infringed on its copyrighted works.

Finally, Cebridge argues that Petitioner's joinder of multiple defendants in a single suit denies the federal courts additional revenue. (ECF No. 4 at 16.) The judicial branch, of course, is not tasked with raising revenue. *See* U.S. Const. art. III. "It is emphatically the province and duty

of the judicial department to say what the law is." *Marbury*, 5 U.S. at 177. Further, if Cebridge

has concerns about federal court revenue, the lower hanging fruit is class actions, by which

millions of dollars in filing fees are lost every year in the name of judicial efficiency.

**V.     Cebridge's Personal Jurisdiction Objection is Erroneous and Premature**

Cebridge objects on the basis that there is no "valid court order that recognizes that [the

court] will ultimately have jurisdiction over the unnamed subscribers." (Ex. B. at 2.) Cebridge's

personal jurisdiction objection is erroneous and premature.

Cebridge's personal jurisdiction objection is erroneous because it suffers from at least

two fatal procedural defects. First, personal jurisdiction objections do not fall on Rule 45's list

of permissible grounds for quashing or modifying a subpoena. *See* Fed. R. Civ. P. 45. The objection

should be denied on this basis alone. Second, Cebridge has no colorable basis for claiming

standing to challenge the Court's exercise of personal jurisdiction over Cebridge's *subscribers*,

who will have their own opportunity to object to personal jurisdiction at the appropriate stage of

the litigation.

Perhaps recognizing the fatal procedural defects associated with its opening objection,

Cebridge makes a tenuous attempt to link personal jurisdiction with the Communication Act's

"court order" requirement. 47 U.S.C. § 551(c). (*See* Ex. B. at 2, 4.) In essence, Cebridge argues

that the Communications Act imposes on Cebridge an obligation to confirm that the court order

authorizing disclosure of its subscribers' information contains a finding that the court would

have personal jurisdiction over the subscribers. This argument is entirely unsupported by the

Communications Act or any interpreting authority, including the *Sony Music* decision, which

instead requires a copyright holder to make a *prima facie* showing of copyright infringement

before revealing the identity of an anonymous copyright infringer. *Sony Music Entm't v. Does 1–*

*40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004). Cebridge's proposed finding regarding personal jurisdiction would be impossible to make at this stage of the litigation when the Court has limited means to assess personal jurisdiction. *First Time Videos, LLC v. Does 1–76*, No 11 C 3831, 2011 WL 3586245, at *5 (N.D. Ill. Aug. 16, 2011) (Bucklo, J.) ("I lack sufficient information for evaluating . . . jurisdictional defenses.")

Beyond these procedural defects, Cebridge's personal jurisdiction objection is premature. Cebridge asks the Court to reach a preliminary finding on personal jurisdiction, ostensibly based on the allegations contained in Petitioner's complaint. The Court should deny this request. *See Anger v. Revco Drug Co.*, 791 F.2d 956, 958 (D.C. Cir. 1986) ("[T]he Federal Rules of Civil Procedure indicate that personal jurisdiction is a matter to be raised by motion or responsive pleading, not by the court *sua sponte*.")

Petitioner is not required to "prove" personal jurisdiction at this stage of the litigation. It is well-established that personal jurisdiction does not even have to be pled. *See, e.g., Hagen v. U-Haul Co. of Tenn.*, 613 F. Supp. 2d 986, 1001 (W.D. Tenn. 2009) ("The burden of establishing the existence of personal jurisdiction lies with the party asserting such jurisdiction, i.e. the plaintiff. Although, a plaintiff is only required to meet this burden when challenged by a motion under Rule 12(b)(2) . . . ."); *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474–75 (D. Del. 1995) (noting Rule 8 does not require plaintiffs to state grounds on which personal jurisdiction is alleged and that the plaintiff's pleading burden changes once the defendant challenges personal jurisdiction). Federal Rule of Civil Procedure 8(a)(2) requires only "a short plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A defendant who:

> receives a complaint and summons from a court in another
> jurisdiction and believes she is not subject to that court's
> jurisdiction … has several alternatives available to her. First, she
> may ignore the complaint and summons and then, if a default
> judgment is issued against her, may challenge the issuing court's
> jurisdiction in a collateral proceeding (presumably closer to home
> or other assets) when the plaintiff seeks to enforce the judgment.
> Second, she may voluntarily waive any lack of personal
> jurisdiction and submit to the district court's jurisdiction. Third,
> she may appear in the distant court for the limited purpose of
> deciding the jurisdictional issue.

*Ellis v. Fortune Seas Ltd.*, 175 F.R.D. 308, 311 (S.D. Ind. 1997). Only if the third scenario

presents itself would the Court have cause to address personal jurisdiction. *Id.*

At this stage of the litigation, no defendant has been named or served with process.

Accordingly, the court is not exercising jurisdiction over any defendant and discussion of

personal jurisdiction is premature. This reasoning is well-accepted within the U.S. District Court

for the District of Columbia. *See, e.g.*, Order, *Imperial Enters. Inc. v. Does 1–3,145*, No. 11-529

(RBW) (D.D.C. Aug. 30, 2011), ECF No. 43 at *3–5, 8 (Walton, J.); *W. Coast Prod., Inc. v.*

*Does 1–5,829*, No. 11-57 (CKK), 2011 WL 2292239, at *5 (D.D.C. June 10, 2011) (Kollar-

Kotelly, J.); *Donkeyball Movie, LLC v. Does 1–171*, No. 10-1520 (BAH), ____ F. Supp. 2d

____, 2011 WL 1807452, at *4–9 (D.D.C. May 12, 2011) (Howell, J.); *Voltage Pictures, LLC v.*

*Does 1–5.000*, No. 10-0873 (BAH), ____ F. Supp. 2d. ____, 2011 WL 1807438, at *4–9

(D.D.C. May 12, 2011) (Howell, J.); *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F. Supp.

2d 332, 345–48 (D.D.C. 2011); *see also Arista Records, LLC v. Does 1–19*, 551 F. Supp. 2d 1,

11 (D.D.C. 2008) (Kollar-Kotelly, J.).

Furthermore, this reasoning is echoed in decisions from federal courts across the nation.

*See, e.g.*, Order Den. Doe Defs.' Mot. to Quash, *Hard Drive Productions, Inc. v. Does 1–118*,

No. 11-1567 (N.D. Cal. Nov. 8, 2011), ECF No. 28 at 3:22–4:8 ("[A] a court cannot assess

whether personal jurisdiction exists over a particular defendant until the defendant has been identified."); Order, *Hard Drive Productions, Inc. v. Does 1–31*, No. 11-22206 (S.D. Fla. Oct. 24, 2011), ECF No. 25 at 5 (finding personal jurisdiction argument "unavailing and premature" because "it remains unclear whether this individual is a party to the litigation" and "the Court lacks sufficient information at this stage of the proceedings"); Order, *Hard Drive Productions, Inc. v. John Does 1–44*, No. 11-2828 (N.D. Ill. Aug. 9, 2011), ECF No. 15 at 2 (Holderman, C.J.) ("[Movant] has not yet been named as a defendant in this case, nor has he been served with process pursuant to Rule 4. Unless and until [movant] has been officially brought into this case, the question of personal jurisdiction remains unripe for resolution by the court."); *see also London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 & n.7, 180–81 (D. Mass. 2008); *Sony Music Entm't, Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 567–68 (S.D.N.Y. 2004).

## VI.    Cebridge's Reimbursement Objection is Factually Baseless

Cebridge objects on the basis that the court order from the underlying action does not provide assurance of "reasonable reimbursement" for Cebridge's compliance. (Ex. B at 2-3.) Once again, this objection does not fall on Rule 45's list of permissible grounds for quashing or modifying a subpoena. *See* Fed. R. Civ. P. 45. Further, Cebridge admits that Petitioner has "in the past offered to reimburse Cebridge for its reasonable expenses." (Ex. B at 2.) In the past, Petitioner has enjoyed a good working relationship with Cebridge. For the past two years, Cebridge has reliably processed Petitioner's subpoenas. In turn, Petitioner has granted Cebridge reasonable extensions of time for compliance and has promptly paid Cebridge for its costs of production. Cebridge's objection is baseless because it has always been adequately compensated, no matter the size of the order. Cebridge has provided no good faith basis for its objection

regarding reasonable reimbursement when Petitioner has promptly and consistently compensated Cebridge in the past for its compliance with subpoenas.

**VII.    Cebridge's Scheduling Objection Is Factually Baseless**

Cebridge objects on the basis that the court order from the underlying action does not provide "a reasonable time to fulfill any large order." (Ex. B at 2-3.) ("Without a valid court order . . . providing for … reasonable time to fulfill any large order, . . . .") The burden is on Cebridge to establish why it is unable to meet the court's timeline for complying with the subpoena, but Cebridge fails to state any facts that explain why the court's timeline is unworkable. (*See generally* Ex. B.) Further, to the extent that Cebridge believes that the court's timeline imposes an undue burden, it is Cebridge's responsibility to propose modifications that would relieve the burden. *See aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F.Supp.2d 770, 771 (N.D. Ill. 2005) (denying a motion to quash a subpoena because, *inter alia*, the parties claiming that the subpoena caused them an undue burden did "not propose[ ] any modification to the specific topics they contend are unduly burdensome.") It is improper for Cebridge to leave the Court and Petitioner guessing when, if ever, Cebridge will be able to fulfill its obligations under the subpoena.

**CONCLUSION**

Petitioner respectfully requests the Court to compel Cebridge's immediate compliance with the Subpoena.


[intentionally left blank]

Respectfully submitted,

MILLENNIUM TGA, INC.

**DATED**: July 18, 2012

By: /s/ Paul A. Duffy
Paul A. Duffy, Esq. (D.C. Bar Number: IL0014)
Prenda Law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601
Telephone: (312) 880-9160
Facsimile:   (312) 893-5677
E-mail: paduffy@wefightpiracy.com
*Counsel for the Petitioner*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 18, 2012, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

   /s/ Paul A. Duffy
PAUL A. DUFFY